## ELDRIDGE *v.* KENNING.

*(Supreme Court, General Term, Fifth Department. January 23, 1891.)*

ADVERSE POSSESSION—WHEN TITLE IS COMPLETE.

Plaintiff's predecessor in title, through mistake as to the true boundaries of land purchased by him, built his fence so as to include other land of his grantor not conveyed by the deed. The land so inclosed was occupied and cultivated by plaintiff and his predecessor as a homestead for more than 40 years. Code Civil Proc. N.Y. § 372, provides that "for the purpose of constituting adverse possession by a person claiming title not founded on a written instrument the land is presumed to have been possessed and occupied * * * (1) Where it has been protected by a substantial inclosure; (2) where it has been usually cultivated or improved." Section 368 provides that such possession for 20 years will overcome the presumption in favor of the owner of the legal title. *Held,* that plaintiff had a good title by adverse possession.

Appeal from special term, Monroe county.

Action by Mary S. Eldridge against Charles R. Kenning. There was a judgment for plaintiff, and defendant appeals.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*F. L. Durand,* for appellant. *Theo. Bacon,* for respondent.

DWIGHT, P. J. The action was for an injunction to restrain the defendant from tearing down a fence claimed by the plaintiff as marking the west line of premises owned and occupied by her on the south side of Court street in the city of Rochester, and from erecting any building or other structure on a strip of land lying east of such fence. The question involved was of the title to the strip of land mentioned. Judgment was for the plaintiff, adjudging her to be the owner of the strip of land in question, and requiring the defendant forthwith to remove therefrom that portion of the building (erected by him after the commencement of the action) which encroached upon the plaintiff's premises, and to rebuild the fence which had been removed or destroyed by him. The judgment, and the conclusion of law upon which it was based, necessarily resulted from the facts found by the court; and those, in turn, seem to have been well supported by the evidence. They were to the effect that more than 40 years before the commencement of the action the plaintiff's father purchased by warranty deed from the common source of title of the parties to this action, and went into possession of lot No. 48 and the east half of the adjoining lot No. 4, of a certain tract in the city of Rochester; that immediately after taking such conveyance and possession he proceeded to inclose his purchase by a substantial board fence, but that by mistake in respect to the true location of the lines of those lots the fence on the west side of the premises so inclosed was placed so far west of the true center line of lot 4 as to include between it and such true line the strip of land in question, being one foot and a half in width on Court street, and two feet and a quarter wide on an alley in the rear; that from the time of the erection of such fence down to the time of the defendant's interference therewith complained of "the said strip of land so inclosed continued to be in the actual, exclusive, adverse,

and notorious possession of this plaintiff and his grantors, claiming to be the owners thereof, and occupying and cultivating the same as a part of the homestead lot of the plaintiff's father and his family and the plaintiff." There is no substantial conflict of evidence in respect to the elements, strictly of fact, which enter into this finding. The real contention on the part of the defendant is that the facts established do not constitute such an adverse possession as will ripen into title by prescription, because such possession was not held under color of title. It is said that the conveyance under which the plaintiff claims did not purport to include the strip of land in question, but, in terms, conveyed only the east half of lot No. 4, and therefore bounded the land conveyed by the true center line of that lot, which is conceded to be the east line of the strip in question. All this is true, but it does not render the plaintiff's possession any the less "adverse," within the meaning of the statute of limitations, upon the undisputed facts of this case. Such adverse possession as will ripen into title in 20 years need not be under color, but only under claim, of title. Section 372 of the Code of Civil Procedure prescribes what is necessary to constitute an adverse possession in favor of one whose claim is not founded upon a conveyance or decree which actually includes the premises in question. The provision is as follows: "For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument or a judgment or decree, land is presumed to have been possessed and occupied in either of the following cases: * * * (1) Where it has been protected by a substantial inclosure; (2) where it has been usually cultivated or improved." In this case both of the conditions prescribed concur, and an undoubted case is made of a possession in the plaintiff and her grantors, adverse to the legal title, for a period of more than 40 years, whereas, by section 368 of the same statute, such a possession for the period of 20 years is sufficient to overcome the presumption in favor of the owner of the legal title. The case at bar seems to be precisely within the doctrine declared, per SELDEN, J., in *Crary* v. *Goodman*, 22 N. Y. 170, 175, viz., "that where a grantee in taking possession under his deed goes unintentionally and by mistake beyond his proper boundaries, and enters upon and actually occupies and improves land not included in the deed, claiming and supposing it to be his, this occupation is to be deemed adverse within the meaning of the statute of limitations, and, if continued for twenty years, would bar the right of the true owner." The doctrine of title by practical location of a boundary line under which many cases of this character have been decided has sometimes been treated as independent of the doctrine of title by prescription under the statute of limitations; but it probably differs from the latter rather in the mode of its statement than in the principle involved. Certainly no title is gained by practical location in any less period than under the statute of limitations, and evidence of the agreement or acquiescence under which such location is established seems to be only another mode of proof of the adverse possession necessary to a title by prescription. But, however this may be, the practical location of a boundary line, either agreed to or acquiesced in, and so maintained for the period of 20 years, constitutes evidence of title of the highest character. In *Baldwin* v. *Brown*, 16 N. Y. 359, it is said to be evidence of so conclusive a nature as to preclude evidence to the contrary; and in *Reed* v. *Farr*, 35 N. Y. 113, the court say: "The evidence so furnished of the correct location of the line is of so high a character as to admit of no contradiction." We regard the plaintiff's case in this action as fully established by evidence of the character referred to, and conclude that the judgment appealed from must be affirmed, with costs. All concur.