[ 221 ]

Jackson, *ex dem.* Smith and Boone, *against* Pierce.

THIS was an action of *ejectment*, for a lot of land in

Where the legal title is in the plaintiff in an action of ejectment, the defendant will not be allowed to set up an equitable title in defence, against the action at law.

*Whitestown.* The cause was tried before Mr. Justice *Spencer,* at the *Oneida,* circuit, the 10th June, 1806, when a verdict was taken for the plaintiff, subject to the opinion of the court on a case, in which the following facts were stated :

[*]*Samuel Rust,* (under whom both parties claim) by his deed, dated the 12th June, 1795, conveyed to the plaintiff, fifty acres of land, including the premises in question. This conveyance was admitted to be subject to the operation of a former deed, from *Rust* to one *Schaeffer,* dated the 29th of April, 1795, including the farm of fifty acres, and with an exception immediately after the description of the land conveyed, in the following words: "excepting, nearly six acres conveyed to *Peter Smith.*" Under this exception, the plaintiff claimed the lot of ground in question, being one quarter of an acre. Evidence was produced to ascertain the precise situation of the lot of ground, but as its locality was not disputed, on the argument of the case, it is not necessary to state the facts proved on that point, at the trial. It appeared, that shortly before the conveyance from *Rust* to *Schaeffer,* the pieces of land excepted out of the deed, making five acres, three rods, and twenty-five perches, were pointed out to *Schaeffer,* and that the defendant had notice at that time, that these parcels were excepted.

On the 15th of February, 1798, the sheriff of the county, by virtue of an execution issued on a judgment entered upon against *Schaeffer,* the 17th of April, 1796, in the supreme court, sold and conveyed to one *Merrill,* the parcel of land, "being part of lot No. 96, in a tract called *Cosbey's Manor,* containing fifty acres of land, be the same more or less, and was on the 23d of December last in possession of *Joseph Pierce.*" The same land was conveyed by *Merrill,* in June, 1798, to one *White,* who sold it in July, 1800, to one *Sanger,* who, on the first of May, 1804, conveyed the same to the defendant. By a written memorandum or agreement, dated the 17th of

April, 1796, *Smith* agreed to sell to Pierce, "all the lands bought of *Samuel Rust,* (except five or six acres sold to *Hicks,* some time ago) and to give a deed," &c. Immediately after making this agreement, the defendant entered and took possession of all the land described in the deed from [*] *Rust* to *Smith,* excepting 5 acres and 67 rods, before conveyed by *Smith* to *Hicks,* and has remained in possession ever since. In a conversation between *Smith, Pierce* and *White,* and another, *Smith* offered to purchase the farm bought by *White* under the sheriff's sale, but afterwards relinquished the design, and told *Pierce* that he might purchase the farm he lived on with safety, *as he would never hurt him,* alluding, as was then understood by the witness, to a claim *Smith* had.

A motion was made at the last term to set aside the verdict, and for a new trial.

*Platt,* for the plaintiff. 1. Should it be said that the conversation respecting the purchase under the sheriff's sale, amounts to an agreement on the part of *Smith,* to relinquish all claim to the premises, and so must estop the plaintiff, I answer that the agreement was verbal; and that there has been no part-performance so as to take it out of the statute of frauds. It is not every act that will amount to a part-performance.*

[KENT, Ch. J. The cases to this point are in the court of equity.† It seems never to have been decided in a court of law, that a part-performance of a parol agreement will take it out of the statute.]

2. But admitting this agreement not to be within the statute of frauds, still it is such a one as can be enforced only in a court of equity. It furnishes no ground of legal defence in an action of ejectment. The decision in the case of *Weakley, ex dem. Yea,* v. *Bucknel,*‡ has been since questioned, (a) and was strongly doubted by the

* *Powel* on Contractsvol. 1. 309. 1 *Fonblanque,* 176, 178. *Wills* v. *Steadling,* 3. *Vesey,* jun. 381.
†See 3 *Vesey* jun.712. 4 *Vesey,* jun. 720. 7 *Vesey,* jun. 341.
‡*Cowper,* 473.

(a) In a note in 5 *East,* 138, 139. it is said, that the *Court of King's Bench* not being agreed in opinion, in the case of *Yea* v. *Rodgers,* directed the case to be argued before all the judges in the *Exchequer*

Lord Chancellor, in *Lowther* v. *Andover*.§   In eject-
ment, the question of title is matter of law, and no act
in [*] *pais*, or a parol agreement, can be set up against
the legal title.   That the plaintiff stood by and saw the
defendant purchase without giving him notice, may be a
defence in equity, on the ground of fraud; but cannot
avail in a court of law.   In fact, as appears from the
evidence, *Pierce* had notice, and therefore there could
be no fraud.

*Kirkland* and *Gold*, contra.   The construction of the
statute of frauds, as to a part-performance, is the same
in a court of law as in equity.

(KENT, Ch. J.   There is such a *dictum* of Justice *Bul-
ler*,* while sitting in the court of chancery, but it has ne-
ver been received as law.)

The principle on which this court will protect the pos-
session of the defendant, though the agreement is not suf-
ficient to pass the legal title, does not proceed so much
on the ground of part-performance, as on equitable prin-
ciples adopted by the courts of law.   Thus in *Yea* v.
*Bucknel*,† the courts of *King's Bench* would not permit
a tenant who had been in possession eighteen years, un-
der an agreement for a lease, to be turned out of posses-
sion, merely that the parties might go into a court of
equity for relief.   In that case an equitable defence was
admitted against a clear legal title in ejectment.   Again;
the plaintiff cannot recover in ejectment, against his own
covenant or agreement.‡   He is estopped by his own
consent.   The language of the plaintiff to the defendant
relative to the purchase of the land under the sheriff's

*Chamber*.   The cause was once argued, and a second argument awar-
ded, but it never came before the judges again.   It was understood,
however, that though Lord *Loughborough*, Ch. J. *Gould*, *Ashurst* and
*Buller* were of opinion that an equitable title might be set up as a de-
fence in ejectment, yet Lord Kenyon, Baron Eyre and Heath, with the
other judges, were decidedly of a different opinion; and it has ever
since been received as settled law in Westminster Hall, that an equi-
table title cannot be set up in defence in ejectment.

NEW-YORK,
May, 1807.

Jackson
·v.
Pierce.

[* 224]
§ 1 *Brown*. C.
C. 396. In
the 3d edition
of *Brown*, in a
note it is said
the point was
then pending
in the exche-
quer cham-
ber.   See 7
*Term* 2. 47.
8 *Term*, 2,
122, 123.   5
*East*. 138.
*See 1 *Vesey*
jun. 433. *Bro-
die* v. *St. Paul;*
and the ob-
servation of
Lord *Eldon*
on this opin-
ion, 6 *Vesey*,
jun. 39.

† *Cowper*,
473.

‡ 4 *Burrows*.
2208 *Right*
v. *Proctor*, {
*East*, *Doe* v.
*Rosser*.

NEW-YORK,
May, 1807.

Jackson
v.
Pierce.

§2Caines,198.

[\* 225]

\*4 Term, 684.
Doe v. Staple.

sale, must be considered as referring to the whole contained in the sheriff's deed, which included the lot in question. In *Jackson* v. *Dysling*,§ this court considered a *parol* agreement to abide by a certain boundary line, though it would not pass the land, as binding on the parties, so as to prevent their claiming against such agreement in ejectment. On a similar principle, it has been often ruled at *Nisi Prius*, that where the vendor located the premises on the sale, he was stopped from asserting any title to the contrary. [\*] In these cases, the court do not require the defendant to show a legal title by deed ; but they admit the equitable defence to overrule, or prevent the assertion of plaintiff's title against equity and justice. This case rests on stronger grounds than that of *Jackson* v. *Dysling* ; for the defendant took possession, under the agreement to convey, and has been in quiet possession near ten years. The defence here, is not a technical trust, or of that species which peculiarly belongs to a court of chancery. The separation of the legal and equitable jurisdiction is peculiar to the English system of jurisprudence, and has not been adopted in all the *American* states. How far this court are bound strictly to adhere to this system, it is not. perhaps, necessary at this time to inquire ; but should the doctrine now contended for, be received, it would be a much slighter innovation on existing rules, than is often to be met with in the history of the English law. Before the reign of *Henry* VII. the *specific recovery* of a term, was held to be exclusively of equitable jurisdiction, and relief was to be found only in a court of chancery ; but the courts of law, in the fourteenth year of *Henry* VII. adopted the same equitable remedy, and permitted the plaintiff in ejectment, to recover possession of his term. It is true, that in 1788,\* the court of *King's Bench*, disclaimed all cognizance of trusts or equitable titles, as exclusively belonging to the court of chancery, but *Buller* was of a different opinion, and considered it contrary to the whole

current of decisions for thirty years past. The cases adverse to this doctrine have all been decided since the revolution, and have not, therefore, a binding authority on this court.

*Platt*, in reply. The possession of the defendant was antecedent to the parol agreement, the true construction of which is, that the defendant might safely purchase the land, actually bound by the judgment against *Schaeffer*.— The words of the plaintiff must be taken in reference to the subject matter, the judgment on which the execution issued. The defendant could not be mistaken, for he knew of the parcel excepted. [*]To purchase the title under the sheriff's sale, was an act of prudence, as the defendant had only a quit-claim from *Smith*, whose title had been defeated by the judgment.

[* 226]

Again, none of the cases cited go beyond that of a covenant to convey, where the purchase money having been paid, the covenantor is considered as standing seized to the use of the bargainee, or where part being performed, a court of equity will decree a specific conveyance. Parol agreements are held to conclude parties in ejectment, only where they explain some doubtful fact about boundaries; not because they prove an equitable title, but because they furnish the best evidence of a disputed fact. When resort can be had to the title-deeds, the terms of which are clear and explicit, no parol agreements, or declarations of the parties, will be received.*

THOMPSON, J. delivered the opinion of the court.

It is not denied that the legal title to the premises in question is in one of the lessors of the plaintiff; but it is contended, that the defendant has an equitable claim, which ought to protect him in his possession. It is unnecessary to examine into the defendant's equitable rights, because, sitting in a court of law, we cannot enforce them, should any be found to exist. It is a rule, at this day well settled in England, (*Buller's N. P.* 110. 2 *Term*, 684. 7 *Term*, 49. 8 *Term*, 123. 5 *East*, 138. *and note.* 6 *Vesey*

* 1 *Caines*, 358, *Jackson ex dem Putnam* v. *Bowen*, 2 *Caines* 198.

NEW-YORK,
May, 1807

[* 227]

*Jun.* 39. 2 *Evan's Poth.* 195.) and which has been adop-
ted by this court, in the case of *Jackson* v. *Chase*, (2 *John-
son*, 84.) that no equitable title can be set up in ejectment,
in opposition to the legal estate.   The only way, in which
an equitable title can be assisted at law, is, by allowing
the presumption, in certain cases, to prevail, that there
has been a conveyance of the legal estate.   But when
the case precludes any such presumption, the legal title
is peremptory, and must prevail.   It is not pretended,
that there is any ground for such a presumption in the
case before us.   The defendant's claim must rest alto-
gether upon the memorandum, or agreement, of the 17th
of April, 1796.   What passed between *Smith* [*] and
the defendant, could not possibly, have been understood
as relating to the premises in question.   The subject of
conversation was the land sold by the sheriff, under an
execution against *Schaeffer*.   The defendant could not
have been deceived on this subject.   The deed from
*Rust* to *Schaeffer*, expressly excepted the premises.—
This was known to the defendant.   The excepted par-
cels were pointed out to him by *Rust*.   But, admitting
him to have been deceived in this respect, it would on-
ly form a part of his equitable claim to relief.

The court are therefore of opinion, that the plaintiff
is entitled to judgment.

Judgment for the plaintiff.